Good morning, Your Honor. You may proceed, I believe. Thank you. May it please the Court. Peter Broder for the appellant. John Edwards. 1992, this Court decided the Spruill case. Spruill had a very direct result. Under the Whistleblower Protection Act, if you claimed reprisal as a result of activities involved in a formal EEO complaint, your remedy was within the EEO system. Well, let me ask you, just to short-circuit this a little, what is it in the analysis in Spruill, and then in Young, with regard to how they analyzed the statutory text and the legislative history, and the reason that you can't have these overlapping proceedings, what is in those cases that would give us a hint that they would not include, their intent was not to include informal EEO complaints, only formal complaints? I'll speak first, since you mentioned it first, to the legislative history. There's a lot of legislative history that went into the Whistleblower Protection Act. There were several bills in prior years that were considered by Congress and not adopted, and finally, in 1989, you had the Whistleblower Protection Act. If you look at the congressional reports that relate to the Whistleblower Protection Act in 1989, there's nothing in the legislative history that suggests the result reached by Spruill. There is one reference in one You're not challenging Spruill here. No, but you asked me the question as to how those cases were derived, and I'm trying to respond. There is nothing in the legislative history except one line No, no, what I meant, I'm sorry if I was unclear, what I meant was what in what the cases relied on would let us think that Spruill was necessarily limited to only formal complaints and didn't also cover informal complaints? Because that was the holding in Spruill. Spruill was very direct. But Spruill didn't say anything like, we're only talking about EEOC complaints, EEOC complaints only and not other types of complaints where the nature is some kind of discrimination and employment claim. That's correct. And it doesn't say anything like that. No, it didn't need to. The issue in the case So we have to look at the reasoning in Spruill to figure out why it reached the outcome it did. And part of the reasoning was looking at a prior bill which had said everything between B1 to B11 is going to be eligible for an IRA and MSPB jurisdiction. And then ultimately that all got stripped down to just B8 activity being eligible for an IRA appeal at the MSPB. And so the Spruill court took that as some kind of important indicator in trying to think about whether EEOC type discrimination is something that's really appropriate for MSPB hearings. And they concluded no, that different things get channeled to different tribunals. EEOC type stuff stays with EEOC and shall not come over to the MSPB. If it were that clear, I would agree with you. But I disagree because it's not that clear. The decision in Spruill was very limited, EEO complaints. It distinguished 2302B9 and 2302B8. And the only reference in B9, B9 includes complaints, grievances, and appeals. The only thing that was referenced in Spruill was the EEO complaint. The holding was very limited. And that's why, with respect, Your Honor, the law that ensued after Spruill is contradictory. When the board decided 30 years later the Edwards case, they overruled their own law, some of their own law. The law was inconsistent. The law from this circuit was certainly not clear. In Edwards, that was decided in May of 2022. What the board did not consider, and I can guess why they didn't consider it, but my guess isn't very important, was this court's presidential decision in Smolenski, January of 2022. Where exactly? The question presented here in Edwards was before the court. In Smolenski, the complaint internally within the Department of Army was of sexual harassment, which was also characterized, as here, as abuse of authority. Was it sexual harassment of a federal employee? Sexual, no. Sexual harassment of Dr. Smolenski's wife, who was not a federal employee, no. So is that a Title VII claim? Doesn't that have to be some kind of adverse employment practice with respect to a federal employee? Mrs. Smolenski was not a federal employee. If this were an EEO case, you'd be correct, but it's not. The question in Smolenski was not the harm that occurred to Mrs. Smolenski, as significant as that may have been. The question was the result for Dr. Smolenski, her husband, who, along with Mrs. Smolenski, made an internal complaint within the Department of Army about sexual harassment and abuse of authority. That was investigated, and as a result, Dr. Smolenski, who was an applicant, he was a military medical officer at the time of the incident. It was a Christmas party, of course. I mean, the theory of your understanding of Smolenski, is it dependent on the view that Dr. Smolenski could have brought this complaint to the EEOC? Yes, he could have. But the Federal Circuit opinion says nothing about that. The Federal Circuit opinion doesn't address this fool-slash-young issue at all. No, the Federal Circuit did not, because it wasn't before the Federal Circuit. I've reviewed the briefs, of course, in Smolenski. I've listened to the argument of my good friends from the Merit System Protection Board. Right, and so I guess what I'm trying to figure out is how much can we really glean from Smolenski if it didn't even wrestle with the particulars of whether or not they had something that could be regarded as a discrimination matter on its hands. Well, I can't guess. I can't answer the question either. I can only look at what the Court did, and what the Court did was to state that the allegations of sexual harassment and abuse of authority were covered under the Whistleblower Protection Act with respect to Dr. Smolenski's claim that he was the victim of reprisal for involvement in that internal complaint. The result seems pretty clear because the case got sent back to the Board for resolution on the merits. And that's essentially what Mr. Edwards did here. He complained of systemic discrimination, racial discrimination, within the Department of Labor also characterized as abuse of authority. The Board did not first. You acknowledged that we typically want to prevent, obviously, double recovery. So are you contending you have two routes and you elect one? Are you contending you can do both routes? What's your overall contention? Yes, sure. Thank you, Judge. The question is are there two routes? Yes, there are. In the Ellison case, the Court made clear that the plaintiff, the complainant, the appellant is free to use whatever remedies that are available. So, yes, there is some duplication. The B-9 process is through the Whistleblower Protection Act. Excuse me, did I say B-9? I meant B-8. The B-9 process is through the EEO complaint process. The two processes are different. The remedies are different. The procedures are different. The time limits are different. The levels of compensatory damages are different. And then, most importantly, the significant difference in these remedies is the ability to gain the assistance. I know, but could you ask her question, which is an important one, is do you have to pick or can you travel both routes at the same time? Travel both routes. That's my answer to your question. And the reason is because the remedial schemes are different and the availability of the remedy is different. And, most importantly, the real question is why should you be able to do this? Why should you not have to elect a remedy? Well, first of all, there's no statutory election that's required. Congress did set up an election of remedies within the Reform Act and the Whistleblower Protection Act, but it doesn't involve what we're dealing with here, although it did involve some special counsel actions. But the real difference in being able to go through the B-8, the individual right of action case, is that you have the availability of the Office of Special Counsel, who can obtain a stay of a personnel action, either a present one or a threatened one, or even a retroactive stay of a personnel action that's already been taken. And, believe me, that is not available in the EEO process. Can I ask you, before your time runs out, another completely different area? Sure. I don't know. Are you arguing that there were two separate incident things that we have to review here? One is the filing of the informal complaint, and then separate and distinct from that are the conversations he had with his supervisors, that those two, are you agreeing that it's all just one thing, or that those are separate? So even if the EEOC complaint we find is covered by SPRUL, there was still another claim of protection? Yes, Judge Price, that's correct. There is a separation in the claims. If this was only an EEO complaint, I'd not be here. So how do you differentiate? I mean, let's assume we just agree with you on SPRUL not covering informal complaints. Correct. So now we're left with any case that has teased out, same operative facts, same complaint, presumably going to your supervisors and complaining is the precursor to going to the informal complaint state. It could be. So you're saying, even though that's a precursor, we should separate, even if SPRUL controls the EEO side, we should separate those two out so that you can proceed along both tracks at the same time, for what is essentially the same disclosure? Your Honor, they're not the same disclosure. Lots of people go the EEO route without going internally and making complaints among men. They just go to the EEO office, complain of perhaps a non-selection for a job, a reprimand. They don't make protests within the agency. Some people, a few people, some rather courageous people. In your case, in the facts of your case, we would be having to do this kind of strange split where certain things were excluded from the MSPB and other things were permitted to go into the MSPB. You might well do. The situation is very unusual. And it would certainly allow for double and couple, right? Because you're saying, are you dividing what was retaliation for the EEOC complaint versus retaliation for the disclosures made to the supervisor? You can't recover twice. But there's an overlap, right? I'm sorry? There's an overlap. There's an overlap in the processes. There's not an overlap in the recovery. You recover just once against the United States. You can't double the recovery. Well, if you've got two proceedings going on concurrently, so assuming you prevail in one of them, does the other add? Does that move out the other one? I'm sorry. I got moved on in the brain. That depends on the remedy that's being sought. If you have a claim for compensatory damages and somebody awards you 50,000 bucks, that's about the end of it depending on which scheme you choose. So even though, I mean, a lot of the arguments behind Skrull and so forth dealt with efficiency and non-overlapping and sort of the efficiency. So you're contemplating a system in which two different agencies, two different proceedings are going along simultaneously. They may even, once they come to the end, then, yeah, one might be mooted out because they might both give identical relief. So you've just gone through two separate proceedings about the exact, the essence of which is the exact same thing, and then one is likely going to be mooted out. What if you win on one and lose on the other? Isn't that a little awkward? I don't think so. If you prevail on anything in the system, you're doing okay. I would say it's not that awkward. The distinction that's important. Well, then there's an inconsistency, right? I mean, it means that two different bodies reviewing retaliatory allegations, two are reaching different conclusions. Oh, I see. How do you reconcile that at the end of the day? Do you go up to the Court of Appeals and say? You can lose for many reasons. But, you know, as a litigator, I know that. But if you lose in one, then you're going to have a question of collateral estopolis to the other. Yes, of course, there should be an impact of a loss in one on the other. So you've got proceedings that are clearly close enough so that there's a collateral estopolis? Could, could. You want us to reserve the rebuttal? I would, thank you. Thank you. Thank you, Your Honors. May it please the Court. Spruill and Young are dispositive of this case. The issue before you today is the same issue that was before the Court 30-some years ago in Spruill. The Court in Spruill called it a straightforward question of statutory interpretation, which it remains even now. Well, can I ask you, let me ask you a question. This is a hypothetical. You've got several different potential buckets here. You've got the Spruill case, which is, you've got a formal complaint. Then you've got our case, which is a little different because you've got one an informal EEOC complaint and the other packaged with a disclosure that is outside of the EEOC ring. What about a third case? What about if Mr. Edwards had just gone to the Washington Post and made these allegations, or to his favorite congressperson and made these allegations to him and then had an allegation, same allegations dealing with EEOC problems in the agency? Is it the government's position that that, too, would be confined to the EEOC? Or when that's just a clean thing that has nothing to do with any EEOC proceedings, is that one allowed to go through the IRA procedure? No, it's our position that regardless of channels, going to the Washington Post, going to Congress, regardless of channels, the Title VII allegations remain Title VII allegations. Under 2302, Title VII is confined to B1, which Congress did not give the MSPB authority to hear in an IRA appeal. In 1221— And there are clear—I'm not an EEO lawyer. So you can go to the EEOC and say, I was retaliated against because I went to the Washington Post and made these discrimination allegations, and the EEOC has relief for that kind of retaliatory conduct? Both Title VII and EEOC regulations provide remedies for opposition to what's called practices made unlawful by Title VII. So the opposition clause of Title VII and also under EEOC regulations, 29 CFR 1614101 paragraph B, that when someone opposes discrimination in their workplace, in the federal government, and they're retaliated against for doing so, they have an EEO claim. And the EEOC says we will treat that type of claim the same way we treat discrimination claims. And the Supreme Court has said this as well, that retaliation for exposing discrimination is the same as discrimination. The Supreme Court said that in Gomez-Perez. So, yes, there is always the avenue for opposing discriminatory practices of going to the EEOC or going through the agency EEO process. On the other hand, Congress did not give the MSPB that authority to hear those types of cases. They could have, as was mentioned, it was an earlier version of the act that gave the MSPB authority to hear any prohibited personnel practice under 2302. But that was not enacted. But this rule of court didn't necessarily say that all claims that arise under B-1 are excluded from MSPB jurisdiction. It didn't say it quite like that. It just simply held that an EEOC complaint doesn't qualify as whistleblowing activity under B-8. I believe this rule of court said this selectivity was intended. It was intended by Congress, that not all of these identified prohibited personnel practices under 2302 are going to be actionable in an IRA appeal. If you look at the prior version of it, there was no qualification. It was all of them. And the enacted version in 1989 didn't have B-1. It only had B-8. It was the only provision that was identified. How do you distinguish Smolenski? Smolenski is purely a whistleblower case. The court, in its decision, did not invoke Title VII, did not invoke sex discrimination. They do use the term sexual harassment. But in doing so, they're not talking about a federal employee, and they're not talking about discrimination in the federal workforce. Do you agree that sexual harassment is a form of sex discrimination? Sexual harassment is a form of sex discrimination in employment, in the EEO law. That is correct. But the person in the situation, let's go back to the facts alleged. The facts alleged in Smolenski did not involve EEO, employment opportunity, because the person involved was not an employee. She was a spouse. So it didn't involve sexual harassment. Sexual harassment is covered by Title VII for federal employees, but sexual harassment, this is your answer, that covers action by one federal employee against creating a hostile work environment for another employee. That's exactly right. And the Smolenski court made no indication that it wanted to overrule Sproul or Young. There's probably a huge spectrum of bad behavior that qualifies to be a violation of Title VII, and there's a huge spectrum of bad behavior that constitutes wrongdoing under B-8. And maybe there is some overlap in terms of how it's described. Sexual harassment was probably a good way to describe what was happening in Smolenski, but it didn't involve federal employees, so it wasn't discrimination of federal employees. Dr. Smolenski himself was a federal employee, so he had a right to file a claim somewhere. And he faced some retaliation for disclosing the way that Colonel bullied him and sexually harassed his wife and then suffered a retaliation event from that. So that's not something that could go to EEOC? Again, it depends on the allegations, which this court has emphasized in various cases. What Dr. Smolenski alleged was not a Title VII claim. What he alleged was that he made disclosures about the poor treatment his wife received at the emergency room, and then after that he had the run-in at the Christmas party and the bad behavior, and both he and his wife cooperated with an investigation into the colonel's behavior. That's also protected under the Whistleblower Protection Act. So he had two claims there, both of which were protected under the Whistleblower Protection Act. He was not claiming that he was being discriminated against for sex discrimination. So he didn't have a Title VII claim. In some of these cases, at least one or two, they had two different claims. One that arguably was not under Title VII, and then another claim for disclosure of misuse of government funds or whatever. I don't think they ever went, anyway, because I think in those cases our court said, you haven't alleged it with sufficient specificity in order to move forward. But if we did have such a case with sufficient specificity, do we bifurcate that, and one goes through door one and the other goes through door two? That's correct. I mean Ellison recognized that you can have, based on the same facts, you can have an array of different claims, including discrimination claims and whistleblower claims. In fact, that's not unusual at all, but there are different procedures for each. If it doesn't involve an adverse action, like this case doesn't involve an adverse action, then the whistleblower process is exclusive to whistleblowing. What about your friend's argument that Congress probably didn't envision this because there's this great avenue of relief that is given to the special counsel to stay something happening, which I've taken on this work, that isn't available under the EEO procedures. So that's one of his arguments, I guess, about employees ought not to be deprived of going this route because they'll lose the right to get this fantastic remedy of a stay, and that Congress wouldn't have necessarily intended that. Right. So the special counsel's authority under 5 U.C. 1214 is different from the board's authority under 1221, and it actually, for statutory interpretation purposes, it's very helpful to compare the two because the special counsel can investigate any prohibited personnel practice in 2302. The MSPB is limited to what Congress says in 1221, which is B-8 and parts of B-9. So the special counsel can ask for a stay in anything it's investigating. The special counsel could ask for a stay of B-1, for example, and come to the board, and in fact, Mr. Edwards cites a board order. It's not a presidential, but a board order granting a stay based on B-1 that was requested by the special counsel. The board's authority to do that, to issue that stay, was under 1214. It doesn't have that type of authority under 1221 because it has no authority under 1221 to get into B-1. B-1 is not one of the provisions that is listed in 1221. So it is true. Do you believe there are two separate claims, as Judge Post kind of identified when she was talking to opposing counsel, or do you think it's just all one and the same? In this case, it's all one claim. It's all Title VII. Everything that's been alleged is Title VII, and the informal complaint makes that clear, and if there was retaliation for that complaint, that comes under, in terms of the Whistleblower Protection Act, that comes under B-9A, as the court said in Spruill and Young, and Congress basically codified Spruill in the WPA when it split up B-9A into complaints having to do with whistleblowing. Just to be a little more specific, is it possible that there are two separate events here, two separate whistleblowing-related acts? One is when Edwards went to the supervisors and disclosed to them that they were engaging in some kind of racial employment practice, and then two, when Edwards later, after he, I don't know, somehow got demoted or had his responsibilities taken away from him, he filed an informal EEO complaint with, I don't know, the HR department or something. So are those two separate events? Do you mean in terms of how they should be treated? Yeah. No, they're both Title VII. It's all Title VII. Opposing discriminatory practices, whether going to management or going to the EEO office or talking to the Washington Post, that all comes under the opposition clause that's in Title VII. It comes under EEOC regulations. You would call it exercising a Title VII right? Yes. And in Young, we said exercising a Title VII right is outside of MSPB jurisdiction. Yes. And in Young, the court also said there's other mechanisms to remedy that. So the court in Young was aware of the EEOC remedy, and so was the court in Sproul, that there was this other remedy. And, in fact, in Sproul, so there's two types of duplication we can talk about. There's getting two bites at the apple, which we sort of discussed earlier. But there's also the duplication of processes, the idea that's discussed in Sproul, which is that EEOC is the expert agency on discrimination. And it seems that Congress has preserved that both when it passed the WPA and when it passed the WPEA. It preserved the role of the EEOC. It didn't give the MSPB responsibilities that duplicate those processes. And it could have, looking at what was considered in 1987, but Congress chose not to. And so this is the system that we have. And if you look at B9A, I think the point I was trying to make before was that it essentially codifies Sproul because it splits up the type of complaints into complaints about whistleblowing and complaints not about whistleblowing, such as EEO complaints. So Congress was very aware of Sproul and this court's case law and did not overrule it and, in fact, preserve Sproul in the law itself. If there's no further questions, we would just ask the court to affirm the decision of the board. Thank you. We'll restore two minutes. And let me – because I have a quick question that I want to – this goes to at the tail end of our discussion when you were up here before, you talked about the two proceedings and potential different outcomes. Sproul, it seems to me, addresses that explicitly. I mean, Sproul talks about what we're trying to avoid. We're trying to avoid – 692 is Sproul. It says we're conserving resources, avoid potentially conflicting procedures or outcomes. I mean, Sproul – our court in Sproul spoke quite clearly of how it didn't envision the procedure going. And that seems contrary to the proceedings that you're advocating to us here. If you read Sproul well beyond the holding, which was limited to EEO complaints, as the board did in the Edwards case, which brings us here, that's true. But the board's law was inconsistent and Smolensky, as I view Smolensky, allows for these internal complaints to be voiced through the IRA process. To me, there's a conflict in the two. Again, the processes are different. And my friend makes a very good point that a person with an EEO complaint can still go to the office of special counsel and ask for a stay. The problem is that the office of special counsel, through their own regulation, says we don't want to deal with that. We want to relegate that to the EEO process. It's kind of circular. The other interesting thing – to me it's interesting – is that if the person with the IRA appeal takes the case from the special counsel to the MSPB, the administrative judge of the MSPB has the authority to entertain a stay application. It's not just limited to the special counsel, which tends to defer to the EEO process. The AJ has that authority as well. Do they exercise it often? I don't know. I don't read all their decisions. But the authority is there. And the burdens of proof in the two different cases are starkly different. The burden of proof is much higher on the government in an IRA case – that's clear and convincing evidence – than in an EEO case where the plaintiff always has the burden of proof on a but-for causation analysis. So the cases are different. And that's why we're here. If you relegate these people to the EEO process and you make it clear, then the board's going to have a lot less business. People won't be taking these IRA cases. But there's a further implication here, which has not been considered by any of the courts, and that's under 2302 B-9, B-2-9. Excuse me, 2302 – I get these terms mixed up – 2302 B-9. The references there are to complaints, grievances, and appeals. Think about grievances. If the board starts considering whether these IRA allegations are subject to a grievance procedure, then a lot of this will be relegated to the collective bargaining contract process. That's not what Congress intended. There's nothing like that in the legislative history. The difficulties in expanding the exclusions to the Whistleblower Protection Act are considerable. And the Whistleblower Protection Act was supposed to be expansive and not restrictive. And that's our position here. And I thank you very much for your consideration. Thank you. We thank both sides in the case.